# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
November 27, 2001 Session

## STATE OF TENNESSEE v. MICHAEL RAINES

### Direct Appeal from the Criminal Court for Polk County
No. 00-014     R. Steven Bebb, Judge

_____

### No. E2001-00996-CCA-R3-CD
### April 17, 2002

The defendant was indicted for first degree murder. After a jury trial, he was convicted of the lesser-included offense of second degree murder and sentenced to twenty-two (22) years as a Range I standard offender. After a thorough review of the record, we conclude that the evidence was sufficient to support the second degree murder conviction. Although the defendant put on proof that he was acting in self-defense or that any irrational actions were the result of adequate provocation by the victim, both issues are questions for the jury and were resolved in favor of the State. The defendant failed to make an argument or cite to authority in support of his assertion that the trial court erred in refusing to instruct the jury on the defendant's right to bear arms. In addition, there is no record of the defendant's request for such an instruction or the trial court's denial of such request. Therefore, the issue is waived. After a de novo review, we conclude that the trial court followed the correct sentencing procedure and applied the correct statutory enhancing and mitigating factors in sentencing the defendant to twenty-two (22) years. The judgment of the trial court is affirmed.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

W. Conrad Finnell, Cleveland, Tennessee, for the appellant, Michael Raines.

Paul G. Summers, Attorney General and Reporter; Angele M. Gregory, Assistant Attorney General; Jerry N. Estes, District Attorney General; and Carl F. Petty, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The defendant, Michael Raines, was indicted for first degree murder. After a jury trial, he was convicted of the lesser-included offense of second degree murder, a Class A felony. He was sentenced as a Range I standard offender to twenty-two (22) years. The defendant filed a timely motion for new trial, which was denied. He subsequently file a timely notice of appeal

alleging: (1) there is insufficient evidence to support his conviction for second-degree murder; (2) the trial court erroneously refused the defendant's request to instruct the jury on his Second Amendment right to possess a gun in his home; and (3) the length of his sentence is excessive.

## FACTS

On October 9, 1999, the defendant, then nineteen years old, and a friend, Alan Bates, went to the home of Lester Pike, a mutual friend. The victim, Glen Young, forty-one years old, was also at Lester Pike's. After listening to music and drinking beer for a couple of hours, the defendant and Mr. Bates decided to leave, and the victim asked to leave with them. Thereafter, the defendant drove the three of them to County Line bar, where they drank beer for another two to three hours. Around nine o'clock p.m., the defendant, Mr. Bates, and the victim left the bar in the defendant's car. The defendant drove to a motel where his girlfriend was staying, but she was not home when they arrived. The three men then rode around for a while. During the ride, the victim told the defendant and Mr. Bates that he had been in prison for murder and had also been questioned about another murder since his release from prison. In their testimony, the defendant and Mr. Bates characterized the victim's statements as bragging about murdering someone. Both the defendant and Mr. Bates also testified that the victim's comments made them uncomfortable and slightly fearful of the victim.

While they were riding around, the victim asked to borrow the defendant's cigarette lighter. The lighter was a Zippo lighter, which the defendant carried in a special case. According to the defendant's testimony, it was given to him by his late-grandfather and had sentimental value. However, Mr. Bates testified that he recalled the defendant telling him that the defendant's boss, Earl Carroll, had given it to him. In any event, the defendant allowed the victim to use the lighter. However, when the defendant later asked the victim to return his lighter, the victim refused. According to the defendant, the victim said it was his lighter now, that it was in his pocket, that he was keeping it, and that he would take "some more stuff too." The defendant eventually stopped the car at a friend,'s, Red Morgan's, house. Mr. Bates testified that he fell asleep during the drive to Red Morgan's and did not hear the conversation about the lighter. Upon arriving at Red Morgan's house, the men were told that Mr. Morgan was not at home. Mr. Bates had a brief conversation with another occupant of the Morgan residence, and then the defendant, Mr. Bates, and the victim left.

After they left Mr. Morgan's house, Mr. Bates indicated to the defendant that he wanted the defendant to take him home. The defendant responded that he wanted to take the victim home first. In his testimony, the defendant explained that he wanted to take the victim home first because he was afraid of the victim and did not want to be alone with him in the car. According to Mr. Bates, the victim told the defendant that he did not want to go home yet. However, according to the defendant, the victim added that he was not going home right then and informed the defendant that the defendant was "going to ride him around." The defendant responded that he did not have enough gas to continue driving around and told the victim and Mr. Bates that he was going to drive to his house to get five dollars from his father for gas. At some point between leaving Red Morgan's house and arriving at the defendant's home, Mr. Bates asked the defendant if he could use the defendant's lighter. The defendant responded that

he did not have the lighter and that the victim had it. Mr. Bates asked the victim for the lighter, and the victim responded "No, it's my G** d*** lighter." Although Mr. Bates never heard the defendant ask the victim to return his lighter, the defendant testified that he asked the victim to return his lighter three or four times.

When the men arrived at the defendant's house, the defendant got out of the car and started towards the house. Mr. Bates then got out of the car and followed the defendant to the front door. Mr. Bates testified that the victim remained in the backseat of the car "slumped over on his side not saying much," and appeared drunk. Mr. Bates stood just inside the front door of the defendant's house talking with the defendant's father, Don Raines, while the defendant went to his bedroom. The defendant returned with his pistol and informed his father that the victim had stolen his cigarette lighter and that he was on private property. Mr. Raines told the defendant not to go outside with the gun and offered to buy him another cigarette lighter. Mr. Bates also asked the defendant not to go outside with the gun. However, the defendant indicated that he was going to take care of the situation himself and walked back outside. Mr. Bates followed the defendant outside but remained on the porch.

The defendant testified that he went outside with the gun in order to scare the victim into returning his lighter. He never intended to shoot the victim or even point the gun at him. He went outside with the gun down at his side and walked a few feet off the porch towards his car and stopped. By this time, the victim had gotten out of the car and started walking toward the defendant. The defendant still had not raised the gun or spoken to the victim. When the victim got close enough to see that the defendant had a gun, he said that if the defendant pointed the gun at him, he would kill the defendant. The victim continued to move towards the defendant after making the threat, and the defendant immediately raised the gun and fired a single shot, which hit the victim in the chest. According to Mr. Bates, the victim was visibly drunk and stumbling toward the defendant when the defendant shot him. However, the defendant maintained that the victim was moving toward him quickly in a threatening manner when he shot him. Both the defendant's father and Mr. Bates testified that they would have assisted the defendant if the victim had attacked him. The testimony also revealed that the victim was slightly bigger than the defendant, but that Mr. Bates, the defendant, and the defendant's father were close to the same height and build as the victim.

After the shooting, the defendant told his father to call 911. He then got into his car and told Mr. Bates to get into the car as well. The defendant then drove out of the county and stopped at the homes of two friends. Mr. Bates testified that they passed a police car during the drive and the defendant commented, "Look at them dumb asses trying to catch us." The defendant denied making such a statement. Upon arriving at the first friend's home, the defendant and Mr. Bates learned that the police were looking for the defendant. After talking privately with the occupant of the house, the defendant left for another friend's house. Mr. Bates remained at the first house and asked the occupant of the home to take him to the police station. She complied, and Mr. Bates gave a statement to the police. The defendant hid the gun under the floor of the second house he visited and then drove back towards his house. On the way, he stopped at the Golden Gallon and was apprehended by police while in the parking lot. Once in custody, the defendant gave a full statement to the police concerning the events surrounding the

shooting and the location of the murder weapon.

Two law enforcement officers, who were involved in the investigation of the victim's murder, testified at the defendant's trial. Numerous photographs depicting the crime scene and the position of the victim's body were introduced into evidence at trial. One photograph of the contents of the victim's pocket, depicted two cigarette lighters, one of which was identified as the defendant's and the other as a plastic Bic lighter apparently belonging to the victim. An autopsy report was admitted indicating that the victim died from a single gunshot to the chest, which severed his aorta. A ballistics report was also introduced indicating that the murder weapon was a .22 caliber pistol and that the shot was fired from a distance of greater than two feet, but less than six feet, from the victim.

## ANALYSIS

The defendant raises three issues in this appeal: whether there is sufficient evidence to support his conviction for second-degree murder; whether the trial court erred by denying the defendant's request to instruct the jury on his constitutional right to have a firearm in his home; and whether the defendant's sentence of twenty-two (22) years is excessive.

### Sufficiency of Evidence

The defendant challenges the sufficiency of the evidence to support his second-degree murder conviction. Specifically, he asserts that the undisputed material evidence supports a conviction of voluntary manslaughter or an acquittal based on self-defense. We disagree. When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this Court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this Court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

Furthermore, a jury verdict approved by the trial judge accredits the state's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this Court of illustrating why the evidence is insufficient to support the jury verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences therefrom. Cabbage, 571 S.W.2d at 835.

In the instant case, the defendant was convicted of second degree murder. Second degree

murder is defined as "[a] knowing killing of another." Tenn. Code Ann. § 39-13-210(a)(1) (1997). "'Knowing' refers to a person who acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist. A person acts knowingly with respect to a result of the person's conduct when the person is aware that the conduct is reasonably certain to cause the result." Tenn. Code Ann. § 39-11-106(a)(20). In contrast, Tennessee Code Annotated section 39-13-211 (a) provides that "[V]oluntary manslaughter is the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." Finally, the self-defense statute provides that "[a] person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force." Tenn. Code Ann. § 39-11-611(a).

In this case, the evidence, taken in the light most favorable to the State, supports the finding by the jury that the defendant committed second-degree murder. Evidence was presented that the defendant was upset because the victim refused to return his cigarette lighter. The defendant drove to his home and went inside to retrieve his gun. While inside, the defendant's father tried to dissuade him from going outside with the gun and even offered to buy him a new cigarette lighter. Notwithstanding his father's pleas, the defendant went outside with the loaded gun to confront the victim. When the victim saw the defendant with the gun, he "staggered" towards the defendant and threatened to kill the defendant if the defendant pointed the gun at him. In response, the defendant raised the gun and fired a single shot into the victim's chest. The victim was unarmed at all times. These actions were more than sufficient to show that the defendant committed a knowing (i.e., was aware that his conduct was reasonably certain to result in a death) killing of another.

The defendant contends that the victim provoked fear and anger by stealing the defendant's cigarette lighter and bragging about being in prison for murder. Such provocation led the defendant to retrieve his gun in order to scare the victim into returning his lighter and to protect himself if attacked by the victim. When the defendant walked outside with the weapon at his side, the victim moved towards the defendant and threatened to kill him if he pointed the gun at the victim. The victim continued to move forward after making the threat, and the defendant alleges that he fired the gun while under the honest belief that he was in imminent danger of death or serious bodily harm. As such, the defendant claims that he was acting in "necessary" self-defense or at the most, he was guilty of voluntary manslaughter because "any irrational behavior on the part of [the defendant] was a direct result of deliberate and adequate provocation by the [victim]." However, the jury was instructed on voluntary manslaughter and self-defense, as well as first and second-degree murder, reckless homicide, and criminally negligent homicide. Whether adequate provocation exists, so as to support a conviction for voluntary manslaughter, is a question for the jury. See State v. Johnson, 909 S.W.2d 461, 464 (Tenn. Crim. App. 1995). Likewise, the question of whether a criminal defendant has acted in self-defense is one for the jury's determination. State v. Clifton, 880 S.W.2d 737, 743 (Tenn. Crim. App. 1994); State v. Ivy, 868 S.W.2d 724, 727 (Tenn. Crim. App. 1993). By convicting the defendant of second-degree murder, the jurors obviously rejected the defendant's contention that he was adequately provoked to act in an irrational manner or was acting under a reasonable fear of imminent death

or bodily injury. Furthermore, the evidence supports the jury's finding. There were two other grown men present, who could have assisted the defendant if he was attacked by the victim. The victim was unarmed and half-drunk by the defendant's own testimony. Finally, the victim did not threaten the defendant until the defendant returned outside with a deadly weapon. From the evidence presented at trial, a rational trier of fact could have rejected the defendant's claim of self-defense or that he was adequately provoked to behave irrationally. This issue, therefore, is without merit.

## Proposed Jury Instruction

The defendant contends that the trial court erred in refusing the defendant's request to instruct the jury on his constitutional right under the Second Amendment to keep and maintain a weapon at his place of residence. We first note that the defendant has cited no authority in support of his position. Furthermore, there is nothing in the record with regard to the defendant's request for the proposed jury instruction or the trial court's denial of such request. According to the State's brief, the trial court's ruling on the proposed instruction was made in chambers and off the record. According to Rule 10(b), Rules of the Tennessee Court of Criminal Appeals, "Issues which are not supported by argument, citation to authorities, or appropriate references to the record will be treated as waived in this court." Accordingly, this issue is waived.

## Length of Sentence

The defendant next challenges the length of his sentence. The defendant argues that the trial court erred by not giving greater weight to the mitigating factors and urges this Court to reduce his sentence to fifteen years, the minimum in the applicable range. After a review of the record, we conclude that we are without discretion to alter the defendant's sentence, even if we would have preferred a different result. When an accused challenges the length, range, or the manner of service of a sentence, this Court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). However, if our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

When conducting a de novo review of a sentence, this Court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102-103, 210. If our

review of the record reveals that the trial court failed to comply with the statutory provisions of sentencing, appellate review is de novo without a presumption of correctness. State v. Winfield, 23 S.W.3d 279, 283 (Tenn. 2000) (citing State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997)).

The presumptive sentence for a Class A felony is the midpoint in the statutory range. Tenn. Code Ann. § 40-35-210(c). In determining the appropriate sentence for a Class A felony conviction, the sentencing court, if there are enhancing factors but no mitigating factors, may set the sentence above the midpoint but still within the range. See id. § 40-35-210(d). If there are mitigating factors, but no enhancement factors, for a Class A felony, then the sentencing court shall set the sentence at or below the midpoint of the range. Tenn. Code Ann. § 40-35-210(d). There is no mathematical formula for valuating factors to calculate the appropriate sentence. State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted).

In the instant case, the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact that are adequately supported by the record. The defendant was classified as a Range I offender convicted of a Class A felony, therefore the appropriate statutory range of punishment was fifteen to twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1). The trial court correctly began its determination of the appropriate sentence length for the defendant at the midpoint, or twenty years, and enhanced the defendant's sentence two years for a sentence of twenty-two (22) years. In its sentencing ruling, the trial court found three applicable statutory enhancement factors: (1) the defendant has a previous record of criminal convictions or behavior in addition to what is required to establish the appropriate range; (9) the defendant employed a firearm during commission of the offense; and (20) the defendant was convicted of a crime as a juvenile that would constitute a felony if committed by an adult. Tenn. Code Ann. §§ 40-35-114 (1), (9), (20).

In mitigation, the trial court applied factor (6), the defendant, because of his youth or old age, lacked substantial judgment in committing the offense. Tenn. Code Ann. § 40-35-113(6). The trial court also considered as a mitigating factor the fact that the defendant himself had been shot within a year of the offense. However, the trial court rejected mitigating factors (2), the defendant acted under strong provocation, and (3), substantial grounds exist to excuse or justify the criminal conduct but fall short of a defense. Tenn. Code Ann. §§ 40-35-113(2), (3).

After a de novo review of the record, we conclude that the trial court properly applied the statutory enhancement factors and mitigating factors. The proof at the sentencing hearing established that the defendant had a juvenile conviction for aggravated assault, a Class C felony if committed by an adult, and a DUI conviction. See Tenn. Code Ann. § 39-13-102. Thus, factors (1) and (20) were properly applied. Enhancement factor (9) was also properly applied. The use of a deadly weapon is not an element of the offense of second-degree murder. See Tenn. Code Ann. § 39-13-210. This Court has ruled that enhancing a murder sentence for the use of a deadly

weapon is permissible. <u>State v. Butler</u>, 900 S.W.2d 305, 313 (Tenn. Crim. App. 1994). With respect to the mitigating factors, the trial court declined to apply factors (2) and (3), finding that both were "a part of the defense in this case and [were] rejected by the jury." We see no error in the trial court's findings and thus, have no authority to disturb the trial court's imposition of a twenty-two (22) year sentence. This issue is without merit.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE